UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

MARK COLLINS,

    Petitioner,

v.

STATE OF NEVADA, *et al.,*

    Respondents.

Case No. 3:16-cv-00433-MMD-VPC

ORDER

This *pro se* petition for a writ of habeas corpus comes before the Court on the respondents' motion to dismiss (ECF No. 15). Petitioner has opposed (ECF No. 26), and respondents have replied (ECF No. 30). In addition, petitioner has filed an unauthorized sur-reply (ECF No. 31), which respondents have moved to strike (ECF No. 32). Petitioner asks the Court to allow the filing of the sur-reply (ECF No. 33), which respondents oppose (ECF No. 34). In addition, petitioner has moved the Court for appointment of counsel (ECF No. 22).

## I. BACKGROUND

Petitioner in this action challenges his conviction pursuant to a guilty plea of two counts of robbery, one count of robbery with use of a deadly weapon, and one count of conspiracy to commit robbery. (ECF No. 13; Exh. 49.[1])

On May 8, 2008, the grand jury in Clark County returned an eighteen-count indictment charging petitioner and two co-defendants, Andrew Cates and Michael Martin,

---

[1]The exhibits cited in this order, which comprise the state court record, are located at ECF Nos. 16-20.

with, *inter alia*, conspiracy to commit robbery in violation of Nevada Revised Statutes §§ 199.480 and 200.380 and robbery in violation of § 200.380 on November 26, 2007. The indictment further charged petitioner, Cates, and an unknown co-conspirator with conspiracy to commit robbery and robbery on November 8, 2007, and conspiracy to commit robbery and robbery with use of a deadly weapon in violation of Nevada Revised Statutes §§ 200.380 and 193.165 on January 15, 2008. (Exh. 6.)

On April 15, 2010, petitioner entered a plea of guilty to four counts of an amended indictment: (1) Count 1 — Conspiracy to Commit Robbery on November 8, 2007, November 26, 2007, and January 15, 2008; (2) Count 2 — Robbery on November 8, 2007; (3) Count 3 — Robbery on November 26, 2007; and (4) Count 4 — Robbery with Use of a Deadly Weapon on January 15, 2008.[2] (Exh. 41.) After petitioner entered his plea but before he was sentenced, his attorney, Thomas Naylor, passed away. (Exh. 43.) Scott Eichhorn was thereafter appointed to represent petitioner. (Exh. 44.) Petitioner was sentenced on August 31, 2010, and judgment of conviction was entered on September 2, 2010. (Exhs. 48 & 49.) Petitioner did not thereafter file any direct appeal.

On November 22, 2011, Eichhorn filed a notice of withdrawal as counsel of record. (Exh. 52.) On June 14, 2012, petitioner filed a *pro se* motion for withdrawal of counsel and for his case file. (Exh. 54.) According to petitioner, Eichhorn did not provide petitioner with any of his case file until June 26, 2012, when he gave petitioner part of his file. (*See* ECF No. 26 (Opp. 40)). On July 11, 2012, the state district court denied as moot petitioner's motion because Eichhorn had already withdrawn and "his standard procedure is for files to be provided to the defendants upon withdrawal." (Exh. 56.)

On April 1, 2013, petitioner filed a state post-conviction petition for writ of habeas corpus. (Exh. 57.) On April, 10, 2014, the Nevada Supreme Court affirmed the state
///

---

[2]Before petitioner entered his plea, Martin had pleaded guilty to robbery with use of a deadly weapon and conspiracy to commit robbery on November 26, 2007, and Cates pleaded guilty to conspiracy to commit robbery and robbery on November 8, 2007, November 26, 2007, and January 15, 2008. (Exhs. 23 & 34.)

1 | district court's denial of the petition as untimely. (Exhs. 69 & 77.) Remittitur issued on May 5, 2014. (Exh. 78.)

On January 6, 2015, petitioner filed a second state postconviction habeas petition. (Exh. 82.) While the petition was pending, petitioner filed a motion to withdraw his guilty plea. (Exh. 92.) The state court denied the second petition as untimely and successive and denied the motion to withdraw plea. (Exhs. 93 & 96.) Petitioner appealed, and both orders were affirmed. (Exhs. 97, 99 & 110.) Remittitur issued on December 15, 2015. (Exh. 115.)

While the appeals were pending, on August 27, 2015, petitioner filed a third state postconviction habeas petition and another motion to withdraw plea. (Exhs. 100 & 102.) The state district court denied the motion and petition as untimely, and the Nevada Court of Appeals affirmed. (Exhs. 112 & 123.) Remittitur issued on July 18, 2016. (Exh. 125.)

On or about June 21, 2016, petitioner dispatched for filing the instant federal habeas petition.[3] (*See* Exh. 1-1.) Respondents move to dismiss the petition as, *inter alia*, untimely.

## II. TIMELINESS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year period of limitations for federal habeas petitions filed by state prisoners. The one-year limitation period begins to run after the date on which the judgment challenged became final by the conclusion of direct review or the expiration of the time for seeking such direct review, unless it is otherwise tolled or subject to delayed accrual.[4] 28 U.S.C. § 2244(d)(1)(A). The limitations period is tolled while "a properly filed application for State post-conviction or other collateral review" is pending. *Id.* § 2244(d)(2). An untimely state habeas petition is not "properly filed" and thus does not toll the limitations period. *Pace v.*

---

[3]Although petitioner indicates that he mailed his petition for filing on June 21, 2016, the Court notes that the petition was dated and signed on July 20, 2016.

[4]While the statute of limitations may also begin to run from other events, petitioner does not claim, and it does not appear from the record, that any of the other events is applicable in this case.

3

*DiGuglielmo*, 544 U.S. 408, 413 (2005). In addition, a state habeas petition cannot toll a federal limitations period that has already expired by the time the state petition is filed. *Laws v. Lamarque*, 351 F.3d 919, 922 (9th Cir. 2003).

Petitioner's judgment of conviction was entered on September 2, 2010. As petitioner did not file a direct appeal, his conviction became final on October 4, 2010 — the date the time for filing a notice of appeal expired.[5] Accordingly, the time period for filing a federal habeas petition began to run on October 5, 2010. Absent a basis for tolling or other delayed accrual, the limitations period expired on October 4, 2011. Thus petitioner's petition, filed on July 20, 2016, is on its face untimely.

While the limitations period can be tolled during the pendency of properly filed applications for State post-conviction or other collateral review, petitioner filed no such applications in state court before the limitations period expired.[6] Petitioner nonetheless argues that his petition is timely based on (1) equitable tolling, and/or (2) actual innocence.

### A. Equitable Tolling

A petitioner can establish an entitlement to equitable tolling under certain, very limited circumstances. Equitable tolling is appropriate only if the petitioner can show that: (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010). Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999), and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)). The petitioner

---

[5] Petitioner had thirty days after September 2, 2010, within which to file a notice of appeal. Thirty days after September 2, 2010, was October 2, 2010, a Saturday. The time for filing a notice of appeal therefore expired the next court date, Monday, October 4, 2010.

[6] All of petitioner's state post-conviction petitions were filed after the limitations period expired and all were denied as untimely. Thus, none of petitioner's state petitions operated to toll the limitations period.

4

ultimately has the burden of proof on this "extraordinary exclusion." *Id.* at 1065. He accordingly must demonstrate a causal relationship between the extraordinary circumstance and the lateness of his filing. *E.g., Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). *Accord Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1061 (9th Cir. 2007).

Petitioner's first argument is that Naylor coerced him into pleading guilty and that this supports a claim of equitable tolling. (ECF No. 26 at 6). Any alleged coercion took place before the judgment of conviction was entered. It therefore cannot and does not provide a basis for tolling the limitations period that began running after petitioner's conviction became final.

Petitioner next argues that Eichhorn refused to file a notice of direct appeal despite petitioner's request that he do so, and that Eichhorn effectively abandoned him. Petitioner did not file his own notice of appeal or state postconviction petition, he argues, because inmate law clerks repeatedly informed him he could not do so. Petitioner asserts that it was not until Eichhorn had withdrawn from representation and — after several months — provided petitioner with a portion of his case file that petitioner was able to file his first state habeas petition. (ECF No. 26 at 12-17; *see also* Exh. 118 at 21-22, 26-27.)

Even assuming that all of the foregoing provides a basis for equitable tolling, the petition is still untimely.[7] Petitioner has not established or argued any basis for tolling beyond June 26, 2012 — the date he received part[8] of his file after Eichhorn had withdrawn. (*See* ECF No. 26 at 16 & 40.) Petitioner knew no direct appeal or postconviction petition had been filed; his delay in filing both his state postconviction petition and the federal petition was thus not a result of a false belief that other litigation was pending. Accordingly, even assuming equitable tolling for all time periods argued by

---

[7]The Court makes no finding that petitioner has in fact established a basis for equitable tolling.

[8]Petitioner does not assert that the lack of the other part of his file prevented him from filing a habeas petition. In fact, he filed several habeas petitions purportedly without the complete file.

5

petitioner, the petition was not filed until more than four years after the limitations period would have expired and is therefore still untimely.[9]

### B. Actual Innocence

Demonstrating actual innocence is a narrow "gateway" by which a petitioner can obtain federal court consideration of habeas claims that are otherwise procedurally barred, including claims filed after the expiration of the federal limitations period. *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995); *Lee v. Lampert*, 653 F.3d 929, 932 (9th Cir. 2011) (en banc) (A "credible claim of actual innocence constitutes an equitable exception to AEDPA's limitations period, and a petitioner who makes such a showing may pass through the *Schlup* gateway and have his otherwise time-barred claims heard on the merits."); *see also McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). In this regard, "actual innocence" means actual factual innocence, not mere legal insufficiency. *See, e.g., Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). "To be credible, [an actual innocence] claim requires petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324. The narrow *Schlup* standard is satisfied only if the new, reliable evidence, together with the evidence adduced at trial, demonstrates that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt. *Id.* at 329.

"[T]enable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggen*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329); *see also House v. Bell*, 547 U.S. 518, 538 (2006) (emphasizing that the *Schlup* standard is "demanding" and seldom met). It is unclear whether the actual innocence gateway always

---

[9]Even if the Court were to extend the equitable tolling period for the pendency of petitioner's first state habeas petition, the petition was still filed three years too late.

6

applies to petitioners who pled guilty. *See Smith v. Baldwin*, 510 F.3d 1127, 1140 n.9 (9th Cir. 2007).

Petitioner asserts that he is actually innocent of the November 8, 2007, robbery based on: (1) his own statements to detectives; (2) third-party statements that co-defendant Cates' wife did not like petitioner; and (3) third-party statements that there were two suspects. (ECF No. 26 22-24.)

In his statement to police, petitioner admitted that he stole the vehicle used in the November 8, 2007, robbery, but claimed he did not participate in the robbery. Rather, petitioner claimed that he gave the vehicle to Cates and a person named "Sante," who then left with the vehicle and committed the robbery while petitioner sat in another car in front of Cate's house. (*See* ECF No. 26 at 18-25; Exh. 3 (Tr. 53-54).)

As an initial matter, none of this is newly presented evidence. All the evidence petitioner cites existed at the time of his plea and much of it was presented to the grand jury, which returned the indictment against him. Further, petitioner's own statements are inherently unreliable and therefore cannot establish his innocence. The relevance of third-party statements that Cate's wife did not like petitioner and he was not allowed in their home is not entirely clear; the best the Court can surmise is that petitioner believes this evidence corroborates his claim that he sat in front of Cates' home in another vehicle while Cates and "Sante" committed the November 8, 2007, robbery. However, proof that petitioner was not welcome in Cate's home in no way corroborates petitioner's claim that he sat in front of Cates' house while the robbery was being committed. As to the third-party statements that there were two suspects, petitioner has pointed to no evidence — other than his own statement — that he was not one of the two perpetrators. Even if petitioner was not one of the two people who directly committed the robbery, however, such does not necessarily absolve him of guilt, particularly in light of the fact that petitioner admittedly stole the vehicle that was used to perpetrate the robbery. There is thus nothing to refute, and plenty of evidence to suggest that, even if petitioner did not actually commit the robbery on November 8, 2007, he was an aider and abettor and thus liable as a

principal. *See* NRS § 195.020. Accordingly, petitioner has not shown that he is actually innocent of the November 8, 2007, robbery.

Petitioner asserts that he is actually innocent of robbery with use of a deadly weapon on January 15, 2008, because there is insufficient evidence to establish that he used any weapon during the robbery. Petitioner claims that he was merely the driver who dropped off two people, including Cates, who then committed the armed robbery. Petitioner asserts that grand jury testimony, witness statements, and reports from police officers prove that the driver never got out of the vehicle, which sped away before the robbery took place. (ECF No. 26 at 26-29.) Petitioner argues that his presentence investigation report ("PSI") identified him as the driver and that no evidence establishes that he was armed or able to control the weapons of Cates and the other person.

Most of this evidence is not new, as it existed at the time of petitioner's plea and was presented to the grand jury. The PSI, which petitioner does not attach, is not evidence — even assuming it says what petitioner claims it does. But even if the Court were to accept that petitioner was the driver of the vehicle and that he did not remain at the scene while the robbery was actually taking place, such does not necessarily absolve petitioner of guilt. A reasonable juror could easily conclude that petitioner, as the person who dropped off two armed robbers, aided and abetted the robbery. The question then becomes whether petitioner is guilty of the use of weapon enhancement. Petitioner claims he was not armed, but he does not provide any reliable evidence establishing as much. And even if he was not armed, he has not established with any reliable evidence that he lacked knowledge of Cates' and/or the other person's use of weapons during the robbery. *See Brooks v. State*, 180 P.3d 657, 661 (Nev. 2008) ("[A]n unarmed offender 'uses' a deadly weapon and therefore is subject to a sentence enhancement when the unarmed offender is liable as a principal for the offense that is sought to be enhanced, another principal to the offense is armed with and uses a deadly weapon in the commission of the offense, and the unarmed offender had knowledge of the use of the deadly weapon."). Petitioner admitted, under oath, that he committed the charged robbery on January 15,

8

2008, and used a deadly weapon during the course of it. (Exh. 42 (Tr. 6).) In light of this admission and the absence of any reliable evidence contradicting it, petitioner has not established that he is actually innocent of the January 15, 2008, robbery.

Finally, petitioner asserts that he is actually innocent of the November 26, 2007, robbery. On November 26, 2007, two armed persons, who emerged from a Dodge cargo van, robbed and stole an ETT Gaming coin van. During the incident, a security guard fired shots at the ETT van. After the ETT and Dodge vans were recovered, a significant amount of blood was found on the driver's side of the ETT van. The blood matched co-defendant Martin. Police developed two other suspects who could have been the passenger in the ETT van or the person driving the Dodge van: petitioner and Andrew Cates. (*See* Exh. 2 (Tr. 106-07); Exh. 3 (Tr. 35-38); Exh. 4 (Tr. 43-44).)

Petitioner asserts the following shows he is actually innocent: (1) the DNA evidence that establishes Martin drove the stolen ETT van, thus establishing he was one of the two armed robbers; (2) petitioner's PSI, which he claims establishes that Cates was the other armed robber; and (3) testimony that possible suspects for the passenger or other driver were petitioner and Cates. (ECF No. 26 at 30-31.)

Again, none of this evidence is new, and the PSI is not evidence. However, even if this evidence were new and reliable, and petitioner merely drove the vehicle that dropped Cates and Martin off to commit the robbery, the evidence is still plentiful that petitioner aided and abetted the robbery even if he did not personally rob the ETT van. Petitioner has therefore failed to establish a gateway claim of actual innocence as to the November 26, 2007, robbery.

In sum, petitioner has failed to establish either actual innocence or an entitlement to equitable tolling. The petition is therefore untimely and must be dismissed.

### III.    MISCELLANEOUS MOTIONS

#### A.    Motion for Appointment of Counsel

Petitioner has moved for appointment of counsel (ECF No. 22). There is no constitutional right to appointed counsel for a federal habeas corpus proceeding.

*Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 428 (9th Cir.1993). The decision to appoint counsel is generally discretionary. *Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir.1986), cert. denied, 481 U.S. 1023 (1987); *Bashor v. Risley*, 730 F.2d 1228, 1234 (9th Cir.), cert. denied, 469 U.S. 838 (1984). However, counsel must be appointed if the complexities of the case are such that denial of counsel would amount to a denial of due process, and where the petitioner is a person of such limited education as to be incapable of fairly presenting his claims. *See Chaney*, 801 F.2d at 1196; *see also Hawkins v. Bennett*, 423 F.2d 948 (8th Cir.1970). Petitioner has been fairly able to present his claims, and the petition is sufficiently clear. In addition, the legal issues are not particularly complExh. Therefore, counsel is not justified.

### B. Motion to Strike

On November 15, 2017, petitioner filed a document that purports to be a sur-reply to the motion to dismiss but which also supplements petitioner's motion for appointment of counsel. (ECF No. 31.) Respondents move to strike the document as a filing that is not authorized under this Court's local rules. Petitioner requests in response that he be allowed to file the document.

Because the document is part sur-reply to the motion to dismiss and part supplement to the motion for appointment of counsel and does not in any event change the Court's determination with regard to either motion, the Court will exercise its discretion and permit the filing of the document. Respondents' motion to strike (ECF No. 32) will therefore be denied.

### IV. CERTIFICATE OF APPEALABILITY

In order to proceed with an appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (quoting *Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* When the defendant's claim is denied on procedural grounds, a certificate of appealability should issue if the petitioner shows: (1) "that jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right"; and (2) "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

Reasonable jurists would not find the district court's dismissal of the petition as untimely to be wrong or debatable. Petitioner has not established or argued any basis for equitable tolling that would make the instant petition timely. Nor has petitioner established that he is actually innocent. The *Schlup* standard is demanding and is one that is rarely met. Petitioner, who pleaded guilty, has not come forward with any new, reliable evidence establishing that it is more likely than not that no reasonable juror would have voted to find him guilty of any of the charged. Accordingly, the Court concludes that petitioner has not satisfied the standard for issuance of a certificate of appealability.

**V.     CONCLUSION**

In accordance with the foregoing, it is therefore ordered that respondents' motion to dismiss the petition (ECF No. 15) is granted, and the petition in this action will be dismissed with prejudice.

It is further ordered that petitioner's motion for appointment of counsel (ECF No. 22) is denied.

It is further ordered that respondents' motion to strike (ECF No. 32) is denied.

It is further ordered that petitioner will be denied a certificate of appealability.

///

///

The Clerk of Court enter final judgment accordingly, in favor of respondents and against petitioner, dismissing this action with prejudice.

DATED THIS 19th day of January 2018.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE